UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| GLEN JONES WARD,<br><br>      Petitioner,<br><br>  v.<br><br>ALBERTO RAMIREZ,<br><br>      Respondent. | Case No. 1:20-cv-00141-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Second Amended Petition for Writ of Habeas Corpus filed by Idaho state prisoner Glen Jones Ward ("Petitioner"), challenging Petitioner's state court conviction of sexual abuse of a minor. *See* Dkt. 11. The Court previously dismissed some of Petitioner's habeas claims but permitted Petitioner to proceed on other claims. *See Succ. Rev. Order*, Dkt. 15, at 13.

Respondent has filed a Motion for Summary Dismissal, arguing that all of Petitioner's remaining claims are procedurally defaulted without excuse and that two of the claims are not cognizable—meaning that they cannot be heard—in federal habeas corpus proceedings. *See* Dkt. 31. The Motion is now ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *See* Dkt. 29, 32; Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court

finds that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court will enter the following Order granting the Motion for Summary Dismissal and dismissing this case with prejudice.

## BACKGROUND

The parties are familiar with the facts underlying Petitioner's conviction. Those facts will not be repeated here except as necessary to explain the Court's decision.

### 1.    Plea and Direct Appeal Proceedings

In the Seventh Judicial District Court in Bonneville County, Idaho, Petitioner pleaded guilty to sexual abuse of a minor.[1] *State's Lodging A-1* at 75. In exchange, the state dismissed the more serious lewd conduct charge. Petitioner was sentenced to a unified term of 18 years in prison with 7 years fixed. *Id*. at 91–96. Petitioner filed a motion for reduction of sentence under Idaho Criminal Rule 35, which was denied. *Id*. at 103, 108, 119.

On direct appeal, Petitioner raised two claims. He argued that the trial court abused its discretion by (1) imposing an excessive sentence and (2) denying Petitioner's Rule 35 motion. *State's Lodging B-1*. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. *State's Lodging B-4*; *B-6*.

### 2.    Initial State Post-Conviction Proceedings

Petitioner then filed a pro se petition for state post-conviction relief. *State's Lodging C-1* at 16–46. The state district court granted Petitioner's motion for appointment of

---

[1] Petitioner entered an *Alford* plea, rather than a normal guilty plea, to the intent element of the offense. *State's Lodging A-2* at 24–26; *see North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally permissible for a court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty.").

counsel, but Petitioner continued to file various documents pro se.

Petitioner's post-conviction counsel filed an amended petition, which asserted the same claims as the initial petition but included additional details. *Id*. at 274–77. After a hearing on the state's motion to dismiss, Petitioner filed a pro se document appearing to state that he wanted to represent himself pro se. *Id*. at 323–25; *State's Lodging C-2* at 28–46.

The trial court dismissed the post-conviction petition and denied as moot Petitioner's pending pro se motions, including the request to represent himself. *State's Lodging C-1* at 393–419. Petitioner appealed and was appointed counsel. *Id*. at 437–41, 444–59.

On appeal from the dismissal of the post-conviction petition, Petitioner argued that the trial court abused its discretion in denying Petitioner's motion to proceed pro se. *State's Lodging D-1*. The Idaho Supreme Court concluded that the Petitioner's request to proceed pro se "was not properly brought before the district court under the Idaho Rules of Civil Procedure"; therefore, the trial court had "no duty to entertain" the motion. *State's Lodging D-4* at 3–4.

The state supreme court reasoned that, if Petitioner's pro se document could even be considered a "motion" at all, it was not accompanied by a request for oral argument or a brief in support and, thus, was subject to denial under Rule 7(b)(3)(E). *Id*. at 4. The court also held that Petitioner's pro se filing "was not the proper method for proceeding without his attorney." *Id*. Instead, if Petitioner wanted to proceed without his attorney, he was required to comply with Rule 11.3 of the Idaho Rules of Civil Procedure.

MEMORANDUM DECISION AND ORDER - 3

Rule 11.3 "provides two methods by which a party may proceed without his attorney":

> First, a party desiring to proceed without an attorney may file a notice of substitution of counsel indicating that he will be representing himself. *Cf.* I.R.C.P. 11.3(a)(1). In such a case, the attorney being replaced must sign the notice. *Id.* Second, if a party's counsel withdraws with the leave of the court under Rule 11.3(b), the party may proceed without counsel. *See Kootenai Cnty. v. Harriman-Sayler*, 154 Idaho 13, 16, 293 P.3d 637, 640 (2012) ("Sayler's attorney moved to withdraw as counsel. The district court granted the motion, and Sayler thereafter appeared pro se."). For an attorney to withdraw under Rule 11.3(b), the attorney must first obtain the court's permission by filing a motion to withdraw, setting the motion for a hearing, and providing notice to all parties. I.R.C.P. 11.3(b)(1).

*Id*. at 5. Because Petitioner did not comply with the procedures set forth in Rule 11.3, his "attempt to invoke his right to self-representation was improper in both form and substance." *Id*. (internal quotation marks omitted).

As "independent communications by a represented party," Petitioner's pro se filing "had no force or effect." *Id*. at 6. Therefore, the Idaho Supreme Court held that the trial court "should have refused to entertain [Petitioner's] independent filings in the first place." *Id*. at 6. The court vacated the denial of Petitioner's request to represent himself. However, because that denial had "no impact on the propriety of" the trial court's decision, the Idaho Supreme Court affirmed the dismissal of Petitioner's post-conviction petition. *Id*. at 7.

After the remittitur issued, Petitioner filed a petition for rehearing that was untimely under state law. *State's Lodging D-5, D-6*; Idaho App. R. 42(a) ("Petitions for rehearing must be physically filed … within 21 days after the filing date of the Court's opinion.").

The state supreme court denied the petition for rehearing. *State's Lodging D-7.*

### 3.   Successive State Post-Conviction Proceedings

Petitioner returned to the state district court and filed a successive petition for post-conviction relief. *State's Lodging E-1* at 1–12. The court dismissed the successive petition on several grounds: (1) the petition was untimely; (2) Petitioner had not established a sufficient reason why the successive claims were not raised (or were inadequately raised) in the initial post-conviction proceedings, *see* Idaho Code § 19-4908; and (3) the successive petition did not include a factual explanation to support Petitioner's claims and was not accompanied by any admissible evidence.[2] *Id.* at 235–36.

Petitioner filed a notice of appeal and a motion to proceed without full payment of fees. *Id.* at 248–56, 259–65. The state district court denied Petitioner's request for in forma pauperis status, concluding that "a reasonable person with adequate means would be unwilling to pay court fees and other costs associated with pursuing" the claims in the successive petition. *Id.* at 268–69. In other words, the court denied Petitioner in forma pauperis status because it found that Petitioner's appeal was frivolous. *See Charboneau v. State*, 102 P.3d 1108, 1111 (Idaho 2004) ("[A] post-conviction proceeding is frivolous … if it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense.") (internal quotation marks omitted).

Because Petitioner's in forma pauperis request had been denied, Petitioner was

---

[2] Under Idaho state law, a post-conviction application must include "verified" facts "within the personal knowledge of the applicant," Idaho Code § 19-4903, and must "be accompanied by admissible evidence supporting its allegations," *State v. Payne*, 199 P.3d 123, 136 (Idaho 2008).

required, under Idaho Appellate Rule 27(c), to pay the fee for preparation of the Clerk's Record. He did not do so. As a result, the Idaho Supreme Court conditionally dismissed the appeal and gave Petitioner 21 days to pay the fee. *State's Lodging F-7*.

Petitioner responded to the court's order, asserting in relevant part that he was not required to pay the fee, that he did not have access to court rules about the fee, and that he did not have enough notice to obtain the money for the fee. *State's Lodging F-8*. After considering Petitioner's response, the Idaho Supreme Court dismissed the appeal. *State's Lodging F-1*. Petitioner filed a petition for rehearing, which the court treated as a motion to reconsider and denied. *State's Lodging F-2, F-3, F-4*. Petitioner's later filings were also denied. *See State's Lodging F-5, F-6*.

## 4.    Petitioner's Federal Habeas Claims

Petitioner filed the instant habeas corpus action in March 2020 and has been permitted to proceed with the Second Amended Petition on several federal constitutional claims:

- Claim 1.1 asserts that the state courts lacked jurisdiction on numerous grounds. Claim 1.2 appears to allege that Petitioner's appellate counsel rendered ineffective assistance by failing to raise this issue.

- Claim 2 asserts a denial of due process based on Petitioner's lack of criminal intent. This may be a due process claim that there was an insufficient factual basis for Petitioner's guilty plea with respect to the intent element of the charges.

- Claim 3.1 asserts that Detective Marley was not a witness to the crime and may be intended to assert there was an insufficient factual basis for Petitioner's guilty plea.

- Claim 3.2 appears to assert a violation of Petitioner's Fifth Amendment right to be free from compelled self-incrimination.

- Claim 3.3 asserts Fifth and Sixth Amendment violations based on *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Massiah v. United States*, 377 U.S. 201 (1964).

- Claim 3.4 asserts a Fourth Amendment violation based on Petitioner's allegedly illegal arrest.

- Claim 3.5.1 alleges ineffective assistance of counsel for failing to file a motion to suppress statements that were unlawfully obtained.

- Claim 3.5.2 asserts ineffective assistance of counsel for failing to advise Petitioner regarding his right to counsel, right to present evidence of an alibi, and right to present witnesses.

- Claim 3.5.3 asserts a constitutional violation based on the trial court's denial of a motion to suppress illegally obtained evidence.

- Claim 3.6 asserts a violation of Petitioner's Fifth Amendment right to speak to an attorney before answering questions.

- Claim 4 is that the prosecution failed to disclose material, favorable evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner was not permitted to proceed on any other aspect of this claim, and the nature and extent of the claim are to be defined by however Petitioner raised the claim in state court.

- Claim 5 alleges that defense counsel was "fraudulent" and asserts three sub-claims of ineffective assistance. Claim 5.1 appears to assert that counsel should have called witnesses in Petitioner's defense and that Petitioner's counsel lied to the trial court by stating, "No witnesses." Claim 5.2 alleges that Petitioner's counsel "lied, manipulated his testimony, and coerced Petitioner into pleading guilty." Claim 5.3 asserts that direct appeal counsel rendered ineffective assistance with respect to an argument regarding a motion to withdraw Petitioner's guilty plea.

- Claim 6.1 asserts that Petitioner's guilty plea was invalid and appears to rest on the same grounds as Claim 5.2. Claim 6.2 alleges ineffective assistance of appellate counsel for ignoring the issue on appeal and may simply be a restatement of Claim 5.3.

- Claim 7.1 alleges a due process violation based on the trial judge's refusal to disqualify himself. Claim 7.2 asserts ineffective assistance

of appellate counsel for failing to raise this issue.

- Claim 8.1 is a prosecutorial misconduct claim based on alleged false statements and intimidation of the following witnesses: Valerie Serena Carlson, Mark W. Ward, Krystina P. Ward, Sylvia Annette Ziolokowski Shallwood, Gregory Warren Rockwood, Darin Berritt, and Lynn McKinley.

- Claim 8.2 asserts a *Brady* violation based on "purposefully withholding exculpatory evidence/witnesses," which seems simply to restate Claim 4.

*See Succ. Rev. Order*, Dkt. 15, at 4–6 (June 19, 2020) (internal citations and alterations omitted); *Order Granting in Part Petitioner's Mot. for Recons.*, Dkt. 21, at 2–3 (Sept. 21, 2020).

The Court reviewed the Petition and allowed Petitioner to proceed on these claims to the extent the claims "(1) are cognizable in a federal habeas corpus action, (2) were timely filed in this Court, and (3) were either properly exhausted in state court or are subject to a legal excuse for any failure to exhaust in a proper manner." *Succ. Rev. Order* at 6.

Respondent now argues that all of these claims are procedurally defaulted and that Petitioner is not excused from the default. Respondent also argues that Claims 3.4 and 3.5.3 are not cognizable in this federal habeas case. *Mot. for Summary Dismissal*, Dkt. 31, at 2. For the reasons that follow, the Court agrees.

## DISCUSSION

The Rules Governing Section 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see*

Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

**1.      All Petitioner's Remaining Claims Are Procedurally Defaulted, and Petitioner Is Not Excused from the Default**

> **A.      *Procedural Default Standards of Law***

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper

exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161–62. Procedurally defaulted claims include the following: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner presented a similar claim, but not as a *federal* claim, to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093–94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard … is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

MEMORANDUM DECISION AND ORDER - 10

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id*. (internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or that it is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

### B.    *The Claims in the Second Amended Petition Are Procedurally Defaulted*

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and

addressed on the merits in the state court appellate proceedings and compare them to the subject matter of the claims in this action. Petitioner pursued three appeals related to his criminal conviction.

On direct appeal, Petitioner argued only that the trial court abused its discretion, under Idaho law, in sentencing Petitioner and in denying his Rule 35 motion. *State's Lodging B-1*. Federal habeas relief is available "only for constitutional violation[s], not for abuse of discretion." *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998); *see also Hayes v. Page*, No. 1:16-CV-00386-BLW, 2017 WL 3709052, at *6 (D. Idaho Aug. 28, 2017) (unpublished) ("An 'abuse of discretion' claim is a state law claim."). Petitioner did not raise any federal claims in his state court direct appeal, much less any claims that match those in the instant habeas petition. Therefore, Petitioner did not properly exhaust any of his current claims in the Idaho appellate courts during direct appeal proceedings.

On appeal from the dismissal of Petitioner's initial post-conviction petition, Petitioner raised only a state law claim that the trial court abused its discretion by denying Petitioner's request to represent himself. *State's Lodging D-1*. His appellate briefing did not raise a single federal claim. *See id.*

Petitioner's petition for rehearing also failed to raise any of his current claims. *See State's Lodging D-6*. Even if it had, however, that petition still could not have constituted fair presentation of any claim, for two reasons. First, the petition for review was untimely under state law. *See* Idaho App. R. 42(a); *see also State's Lodging D-5* (issuing the remittitur because the court "announced its Opinion in this cause February 18, 2020, *which has now become final*") (emphasis added). The 21-day time period in Idaho Appellate Rule

42 has been in place for decades, lasting through multiple rule amendments, and there is

no evidence that the Idaho state courts fail to apply Rule 42 in a consistent manner. *See*

Idaho App. Rule 42 (adopted March 25, 1977, effective July 1, 1977; amended March 20,

1985, effective July 1, 1985; amended March 28, 1986, effective July 1, 1986; amended

January 4, 2010, effective February 1, 2010; amended March 18, 2011, effective July 1,

2011; amended November 20, 2012, effective January 1, 2013; amended and effective

January 24, 2019).

Second, the Idaho Supreme Court does not consider claims made for the first time

in a petition for rehearing. This is an adequate and independent state procedural rule that,

like Rule 42, has existed for decades. *See, e.g., Johnson v. Bekins Moving & Storage Co.*,

582, 389 P.2d 109, 117 (Idaho 1963) ("[A] contention cannot be considered when raised

for the first time in a petition for rehearing."); *see also Meister v. Ramirez*, No. 1:19-CV-

00173-CWD, 2020 WL 1932598, at *4 (unpublished) (D. Idaho Apr. 21, 2020) (holding

that this procedural rule is adequate and independent). There is nothing to suggest that this

rule is inconsistently applied by Idaho's appellate courts, and Petitioner's initial post-

conviction proceedings thus did not serve to properly present any of his current habeas

claims. *See Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) ("Submitting a new claim

to the state's highest court in a procedural context in which its merits will not be considered

… does not constitute fair presentation.").

On appeal from the denial of his successive state post-conviction petition, Petitioner

also failed to present any of his federal habeas claims. The Idaho Supreme Court dismissed

that appeal for failure to pay the fee for preparation of the Clerk's Record. Requiring this

fee from appellants who are not proceeding in forma pauperis is a longstanding procedural rule, which the Court has already held to be adequate and independent. *See Ruiz v. Blades*, No. 1:17-CV-00273-BLW, 2018 WL 4682304, at *5 (D. Idaho Sept. 28, 2018) (unpublished) ("Idaho Appellate Rule 27—which requires clerk's record fees unless a party seeks and is granted a fee waiver in the state district court—is regularly and consistently applied and … it does not depend on the application of federal law."). Because the Idaho Supreme Court dismissed the successive post-conviction appeal on an adequate and independent procedural basis, those proceedings did not fairly present Petitioner's habeas claims.

Petitioner argues that he attempted several times to have his claims heard in post-conviction proceedings, but that the state courts refused to entertain his pro se filings or to permit him to speak on his own behalf. *See, e.g.*, Dkt. 46 at 11. There are some circumstances where a pro se motion filed by a represented litigant can constitute fair presentation of a claim raised in the motion. In *Clemmons v. Delo*, the Eighth Circuit held that a claim was fairly presented to the state court, even though counsel failed to raise the claim in appellate briefing, because the petitioner "did the only thing he could do: he tried to bring the issue to the attention of the [court] himself" by filing a motion pro se. 124 F.3d 944, 948 (8th Cir. 1997).

However, the principle of fair presentation established in *Clemmons* does not apply where the state court has a "regularly applied rule of state procedural law" that bars represented litigants from filing pro se documents independently of counsel. *Id.* at 956; *see Oglesby v. Bowersox*, 592 F.3d 922, 925 (8th Cir. 2010) (holding that the *Clemmons*

principle, though applicable in certain "unique circumstances," does not apply if the petitioner's "claim was defaulted pursuant to an independent and adequate state procedural rule that is firmly established and regularly followed"). Idaho courts have a consistent and longstanding practice of refusing to consider pro se filings when the filing party is represented by counsel. *See, e.g., Moen v. State*, No. 40600, 2014 WL 5305905, at *11 (Idaho Ct. App. Oct. 15, 2014); *Johnson v. State*, No. 38425, 2012 WL 9490829, at *2 (Idaho Ct. App. Feb. 3, 2012); *Musgrove v. State*, Case No. 37407, 2011 WL 11037672, at *1 (Idaho Ct. App. May 16, 2011); *State v. Brink*, Case No. 34391, 2008 WL 9471256, at *8 (Idaho Ct. App. Nov. 7, 2008).

Post-conviction petitioners in Idaho appellate matters have two clear, mutually-exclusive choices: either they choose to be represented by counsel, or they choose to ask counsel to withdraw so they can proceed pro se. A petitioner cannot have it both ways. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (holding that the Sixth Amendment does not entitle a criminal defendant to "hybrid" representation—that is, a defendant does not have the right to represent himself *and* to have the assistance of counsel). The Idaho courts are entitled to create rules that aid them in the orderly administration of cases, and this is one such rule. Therefore, the *Clemmons* principle does not apply in this case to render Petitioner's habeas claims properly exhausted.

Petitioner did not fully and fairly present any of his federal habeas claims to the Idaho Supreme Court. Because it is now too late for him to do so, all of those claims are procedurally defaulted. *See Gray*, 518 U.S. at 161–62.

MEMORANDUM DECISION AND ORDER - 15

C.      *Petitioner Has Not Established a Legal Excuse for the Procedural Default of His Claims*

The Court's conclusion that Petitioner's claims are procedurally defaulted does not end the inquiry. A federal district court can still hear the merits of a procedurally defaulted claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence. *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

i.      Petitioner Has Not Shown Cause and Prejudice

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of counsel ("IAC") is a frequent assertion in post-conviction and habeas proceedings. The Supreme Court explained the standard for ineffective assistance claims in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting IAC must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice

to prove an IAC claim. *Id.* at 697.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687–88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight, and courts reviewing allegations of IAC "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. That is, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound [litigation] strategy." *Id*. (internal citations and quotation marks omitted).

IAC can constitute cause for purposes of procedural default analysis. For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for IAC—whether at trial or on direct appeal—to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance ... generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted).

In other words, before a federal court can consider ineffective assistance of trial or direct appeal counsel as cause to excuse the default of an underlying habeas claim, the petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition,

including through the level of the Idaho Supreme Court. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show an excuse for that separate default, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Therefore, the general rule is that any errors of counsel during a post-conviction action cannot serve as cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. *Martinez* applies only to underlying claims of trial-counsel ineffectiveness, and it can apply only if the underlying claim is both exhausted and procedurally defaulted. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013).

The *Martinez* cause-and-prejudice test consists of four necessary prongs: (1) the underlying IAC claim must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial"

collateral review proceeding where the IAC claim could have been brought; and (4) state law requires that an IAC claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013). The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim.

To show that an IAC claim is "substantial" under *Martinez*, a petitioner must point to evidence demonstrating that the underlying ineffectiveness claim has "some merit." *Martinez*, 556 U.S. at 14. That is, the petitioner must submit at least *some* evidence tending to show (a) that trial counsel performed deficiently in handling some aspect of pretrial or trial duties and (b) that the deficient performance harmed the defense, which is defined as a reasonable probability of a different result. *Strickland*, 466 U.S. at 695–96 (1984).

Even if an underlying claim is substantial under *Martinez*, a petitioner must also show that ineffective assistance of post-conviction counsel in the initial-review collateral proceedings caused the default of that claim. This requires a showing not just that the claim was omitted or not fully pursued in the initial post-conviction action, but also that the post-conviction attorney in the initial post-conviction matter was ineffective, meaning that (1) post-conviction counsel performed deficiently in failing to raise or to fully pursue the claim, and (2) it is reasonably probable that, absent the deficient performance, the petitioner would have prevailed in the post-conviction proceeding. *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016); *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc).

From Petitioner's initial and supplemental opposition to Respondent's Motion for Summary Dismissal, it appears he is arguing that all of his attorneys rendered ineffective assistance in not fairly presenting his current habeas claims to the Idaho state courts. *See* Dkt. 43, 46. However, in support of this cause-and-prejudice argument, Petitioner offers nothing more than vague and conclusory statements that are insufficient to show IAC to excuse the default.

For example, Petitioner contends that the procedural default itself, which he asserts was caused by counsel, establishes *Strickland* prejudice for purposes of the cause and prejudice analysis. *See* Dkt. 43 at 4 ("[F]ailure to present such claims to the Idaho State Supreme Court [further validating Strickland's prejudice prong <due to fraudulent & ineffective counsel [all]>].").[3] This is incorrect as a matter of law. Default of a claim is not automatically prejudicial—otherwise, defaulting a claim "would eliminate entirely the prejudice prong of the cause and prejudice analysis." *Meister*, No. 1:19-CV-00173-CWD, 2020 WL 1932598, at *7 n.4.

Petitioner also asserts that his attorneys were former prosecutors and that they did not raise all the claims he wanted raised, implying that his lawyers were somehow not adequately representing him. Dkt. 46 at 2, 5. But Petitioner has offered no evidence whatsoever to support such conclusory allegations of deficient performance. Accordingly, Petitioner has not rebutted the strong presumption that Petitioner's direct appeal and post-conviction attorneys made reasonable strategic decisions about which claims to assert,

---

[3] In this decision, all quotations from Petitioner's briefing are shown with corrected capitalization but original punctuation.

given the relative likelihood of success on each potential claim. *See Strickland*, 466 U.S. at 689; *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

In addition to alleging IAC, Petitioner asserts that the state courts themselves caused the default of his successive post-conviction claims. Petitioner contends he was never told how much money he had to pay for the required fees in his successive post-conviction appeal. Dkt. 46 at 8 ("Nor was Ward given fair chance (2nd post-conviction petition); time; nor quoted cost for clerk's records to be processed.") Petitioner also seems to accuse unidentified state court personnel of demanding bribes to permit him to proceed. *See* Dkt. 46 at 3 (stating that no court clerk "ever said how much Ward had to pay them, before they would even give [his] paperwork a second chance.") (alterations omitted), and at 5 ("Courts wanted more money (failing/refusing to specify amount [Ward arguing 'Even captors will leave a ransom note.") (alterations omitted). Once again, there is nothing in the record to support Petitioner's allegations.

Petitioner also appears to claim that precedent from the Ninth Circuit, and from this Court, constitutes cause and prejudice to excuse the procedural default of his claims. Petitioner asserts he has learned through the courts that if "[y]ou have yet to exhaust your state remedies – you are granted forbearance (tolling?) – until your state remedies are exhausted." Dkt. 46 at 4. But tolling and procedural default are two different procedural mechanisms. Timeliness of the federal petition is not at issue; therefore, this argument is irrelevant. Because Petitioner has no state court remedies left, this Court will not permit

him to return to state court to attempt proper exhaustion, which is now impossible.

Petitioner also relies on a previous civil rights case that he filed in this Court. *See* Dkt. 46 at 9 (referring to *Ward v. Idaho*, Case No. 3:17-cv-00320-BLW (D. Idaho, dismissed Dec. 4, 2017)). The Court dismissed that civil rights case without prejudice, and Petitioner asserts that the dismissal effectively communicated to him that he could refile the claims after exhausting them. *Id*. at 9. However, a court's dismissal of an earlier *civil rights* action says nothing about whether that court may consider the merits of a petitioner's later *habeas corpus* claims. These are different statutory schemes with different requirements and different available remedies. And a dismissal without prejudice in federal court means only that a later federal case raising the same claims would not be dismissed under principles of claim or issue preclusion; it does not say anything about whether the federal court might be barred from considering the claims on some other basis, such as the procedural default doctrine.

For these reasons, Petitioner has not established cause and prejudice to excuse the default of his claims.

ii.      Petitioner Has Not Shown Actual Innocence

If a petitioner cannot show cause and prejudice for a procedural default, a federal habeas court can hear the claim only if the petitioner demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *Murray*, 477 U.S. at 496. This standard requires proof that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Id*. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S.

614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A procedurally defaulted claim may be heard under the actual innocence exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the constitutional error, *every* reasonable juror would vote to acquit.

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Indeed, cases where the actual innocence gateway standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013). Such evidence may include new DNA evidence, or "a detailed third-party confession," that "undermine[s] the validity of the prosecution's entire case." *Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002); *see House*, 547 U.S. at 540–41. The actual innocence exception is not satisfied by evidence that is merely speculative, collateral, cumulative, or "insufficient to overcome otherwise convincing proof of guilt." *Larsen*, 742 F.3d at 1096.

In considering the actual innocence exception, a court has the discretion to assess the reliability and probative force of the petitioner's proffer, including making some

credibility determinations, if necessary. *Schlup*, 513 U.S. at 331–332. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (statute of limitations context) (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has not produced any new, reliable evidence that he is actually innocent. He refers vaguely to "affidavits" that purportedly support his innocence. *See, e.g*., Dkt. 46 at 9. Petitioner also asserts that the conduct to which he pleaded guilty was intended either as a lesson in self-defense for the victim or an attempt to respond to a medical emergency that threatened the victim's life. *Id*. at 10, 13. Finally, Petitioner relies on the fact that he had numerous "mature women fawning over him" so that he had "no need for sex with" the minor victim. *Id*. at 13. None of these self-serving statements constitutes reliable evidence that Petitioner is factually innocent.

Because Petitioner has not established actual innocence or cause and prejudice to excuse the default of his habeas claims, the Second Amended Petition must be dismissed.

## 2.    Claims 3.4 and 3.5.3 Are Not Cognizable

Claims 3.4 and 3.5.3 both assert violations of the Fourth Amendment, which protects individuals against unreasonable searches and seizures by government officials. In addition to being procedurally defaulted, these two claims are subject to dismissal for an additional reason—they are not cognizable on federal habeas corpus review.

The threshold issue for a Fourth Amendment claim presented in a federal habeas

petition is whether the state provided the petitioner an opportunity for full and fair litigation of his claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Under *Stone*, if the federal district court determines that the petitioner had a full and fair opportunity to litigate the claim in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*.

The *Stone* doctrine is based on the principle that the exclusionary rule is "not a personal constitutional right" but is instead a practical way to deter police conduct that violates the Fourth Amendment. *Id.* at 486. The social costs of the exclusionary rule are high—the rule "deflects the truthfinding process and often frees the guilty." *Id.* at 490. On collateral review of a criminal conviction, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494-95. Therefore, if a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, that claim cannot serve as a basis for federal habeas relief.

To determine whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, a federal district court "inquire[s] into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). If the court determines that the state court procedures are adequate, the inquiry ends there. *Id*. at 8-9. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those

claims." *Id*. at 9. Stated another way, "[t]he relevant inquiry is whether petitioner had the *opportunity* to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (emphasis added). Petitioner bears the burden of establishing that he lacked the opportunity to pursue his Fourth Amendment claims in state court. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court—he simply did not take advantage of that opportunity. Petitioner could have filed a motion to suppress evidence obtained in violation of the Fourth Amendment. If that evidence were not excluded, he could have negotiated a conditional plea, or proceeded to trial, and raised his Fourth Amendment claims on appeal. He chose not to do so. *See Yakovac v. Underwood*, 2010 WL 3735708, *6 (D. Idaho Sept. 4, 2010) (unpublished) ("Here, although Petitioner's trial counsel did not file a motion to suppress in state court on Fourth Amendment grounds, Petitioner has not shown that her counsel was deprived of an opportunity to do so."). Therefore, Claims 3.4 and 3.5.3 are not cognizable under *Stone*.

## CONCLUSION

For the foregoing reasons, the Court concludes that all of Petitioner's remaining claims are procedurally defaulted, without legal excuse, and that Claims 3.4. and 3.5.3 are not cognizable. Therefore, the Court must dismiss this case with prejudice.

///

///

## ORDER

**IT IS ORDERED:**

1.      Respondent's Motion for Summary Dismissal (Dkt. 31) is GRANTED, and

the Second Amended Petition is DISMISSED with prejudice.

2.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a

timely notice of appeal with the Clerk of Court. Petitioner may seek a

certificate of appealability from the Ninth Circuit by filing a request in that

court.

DATED: September 21, 2021

David C. Nye
Chief U.S. District Court Judge